J-A20031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                   :  PENNSYLVANIA
                                   :
          v.                      :
                                   :
                                   :
FRANCES PONCE  :
                                   :
            Appellant         :  No. 878 MDA 2022

Appeal from the Judgment of Sentence Entered April 18, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0002681-2021

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: OCTOBER 12, 2023**

Appellant Frances Ponce appeals from the judgment of sentence entered April 18, 2022 after pleading nolo contendere to the charges of strangulation, terroristic threats with intent to terrorize another, and simple assault. We affirm.

The relevant facts and procedural history are as follows: On June 20, 2021, Appellant approached her sister at a Walmart and threatened her by saying, "I'm going to kill you." Notes of Testimony from Trial (hereinafter "N.T.T.") at 37. Appellant followed her sister to the parking lot, opened her sister's driver's side door, and attacked her sister causing injuries. N.T.T. at 39. Walmart surveillance video captured Appellant grabbing her sister's hair,

---

[*] Former Justice specially assigned to the Superior Court.

punching her, biting her, and choking her. N.T.T. at 40, 43-44. Appellant was arrested on June 20, 2021 on charges of criminal attempt – strangulation; terroristic threats with intent to terrorize another; simple assault; and disorderly conduct.

On April 1, 2022, Appellant presented a *pro se* motion to the court indicating that she did not want the representation of her assigned public defender, John Bender. N.T., Grazier Hearing, at 25. After a **Grazier**[1] hearing determined that Appellant's choice was knowing, intelligent, and voluntary, she was granted permission to represent herself at trial. N.T., Grazier Hearing, at 33. At that proceeding, the court informed Appellant several times of the time and date she must appear for her trial to commence.

> THE DEFENDANT: On April 11 is the next appointment date.
> THE COURT: No, this trial is scheduled to begin April 18. Is that correct, Mr. Bender?
> ATTORNEY BENDER: Based on what Attorney Mansfield said, yes, the first date would be the 18th that it could start.
> THE COURT: That was Monday the 18th. That was for trial. . . .
>     *    *    *
> THE DEFENDANT: I will change counsel.
> THE COURT: You want to fire Mr. Bender?
> THE DEFENDANT: Yes.
> THE COURT: And you want this case to be listed for trial on the 18th of April, is that what you're asking?
> THE DEFENDANT: Well, no, if you could do it for the 27th of May.
> THE COURT: No, no, this is listed for trial April 18th. If you get yourself another lawyer, another attorney, and pay that other lawyer and they enter his or her appearance, they can talk to the District Attorney's Office and then I can decide. But if what you want is to discharge Mr. Bender here today, that's your call. Is that what you want to do?

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

THE DEFENDANT: Um-hum.
THE COURT: Yes?
THE DEFENDANT: Yes.

N.T., Grazier Hearing, at 32, 33.

On April 18, 2022, the date assigned for trial, Appellant failed to appear. The District Attorney requested that the court allow the trial to proceed *in absentia*. The court attempted to contact Appellant on the phone and left a message when Appellant did not answer. N.T.T. at 6. Standby counsel sent Appellant an email and stated he had not heard from her either. N.T.T. at 5. At 10:02 a.m., the trial court stated, "[Appellant] has chosen not to show up. We are about to start the jury trial." N.T.T. at 8. A bench warrant was issued, a jury was selected, and the Commonwealth presented evidence. The court declared a recess at 12:01 p.m., and at 1:15 p.m., Appellant appeared. N.T.T. at 51-52. When the court asked Appellant why she did not appear, Appellant conceded the court had given her notice but that she instead relied on information she found on the internet. N.T.T. at 52.

THE COURT: You were specifically told this trial is going to start today the last time we met.
THE DEFENDANT: I understand, but usually when you guys make changes or not, you put it on the computer. It was not on the computer.
THE COURT: The last time you were in this courtroom, we had the hearing to determine whether or not you wished to proceed with Mr. Bender as your attorney. You chose not to. I specifically told you that the trial was to start today at 9 a.m.
THE DEFENDANT: I understand what you said; therefore, I went to the computer to make sure of the date because I sometimes don't remember things and this is what I saw. So I was going by your website, case calendar events. I thought it might be here for this date on this paperwork and it wasn't. I have the printout of today to bring as a copy showing April 18th.

> THE COURT: Let me see. This is simply the criminal docket. It simply says awaiting trial.

N.T.T. at 52-53. Appellant admitted that she did not attempt to contact the courthouse, chambers, or District Attorney's office to verify the date. N.T.T. at 54. The trial court judge later confirmed that the schedule on the court's website did in fact display the time and the date for the start of Appellant's trial as April 18 at 9:00 a.m. N.T.T. at 85.

The court at that time gave Appellant the option to proceed with the trial *pro se* or plead guilty to the charges. N.T.T. at 68-69. Appellant chose to enter a plea of nolo contendere on the charges of strangulation, terroristic threats, and simple assault; the disorderly conduct charge was *nolle prossed*. N.T.T. at 70, 72. Appellant was immediately sentenced to an aggregate sentence of five years' probation on all charges. N.T.T. at 84. Appellant obtained counsel and on April 27, 2022, filed a motion to withdraw the plea. The motion was denied on May 11, 2022. This appeal followed.

Appellant raised three issues on appeal: (1) that the trial court violated Appellant's Due Process rights by proceeding *in abstentia*; (2) that the trial court violated the Rules of Criminal Procedure by commencing the trial *in abstentia*; and (3) that the trial court erred by denying Appellant's Post Sentence Motion for withdrawal of her plea of nolo contendere. Appellant's Br. at 3. However, Appellant failed to develop and support her argument on the first two issues in her brief. She cites to no caselaw and makes no argument as to why the trial court should not have proceeded in her absence or that her failure to show was for good cause. This court has held:

When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

***Commonwealth v. Elliott***, 249 A.3d 1190, 1195 (Pa.Super. 2021). Because such an omission impedes our ability to address the issue on appeal, an issue that is not properly briefed in this manner is considered waived. Accordingly, Appellant's claim that her constitutional rights and the Rules of Criminal Procedure were violated are waived.

Appellant's last issue is that that the trial court erred by denying Appellant's Post Sentence Motion for withdrawal of her plea of *nolo contendere*. Specifically, Appellant argues that the trial court unduly influenced Appellant's decision to plead by improperly counseling her, overstating the Commonwealth's case, and making threats of incarceration. Appellant's Br. at 7-8. Appellant claims she was "under [d]uress, [a]nxiety, and [s]evere [e]motional [d]istress," making her plea not knowing, voluntary, and intelligent. Appellant's Br. at 6.

The relevant standard of review is well-settled. "When considering the propriety of a trial court's denial of a motion to withdraw a guilty plea, we are bound by the determination of that court unless we find that it committed an

abuse of discretion." ***Commonwealth v. Mobley***, 581 A.2d 949, 952 (Pa.Super. 1990) (citation omitted). Further,

> by entering a nolo contendere plea, a defendant does not admit that he is guilty. As the United States Supreme Court has held, a plea of nolo contendere is a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty. [T]he difference between a plea of nolo contendere and a plea of guilty is that, while the latter is a confession binding defendant in other proceedings, the former has no effect beyond the particular case. Thus, for purposes of proceedings relating to the charges, [a defendant] agree[s] to be treated as guilty of the crimes.

***Commonwealth v. V.G.***, 9 A.3d 222, 226-27 (Pa.Super. 2010) (citations and quotation marks omitted; emphasis omitted).

"[I]n terms of its effect upon a case, a plea of nolo contendere is treated the same as a guilty plea." ***Commonwealth v. Lewis***, 791 A.2d 1227, 1230 (Pa.Super. 2002), appeal denied, 806 A.2d 859 (Pa. 2002) (citations omitted). The decision to allow a defendant to withdraw their guilty plea post-sentence is a matter that rests within the sound discretion of the trial court. ***See Commonwealth v. Muhammad***, 794 A.2d 378, 382-383 (Pa.Super. 2002). It is well settled in this Commonwealth that the entry of a guilty plea constitutes a waiver of "all non-jurisdictional defects except the legality of the sentence and the validity of the plea." ***Commonwealth v. Lincoln***, 72 A.3d 606, 609 (Pa.Super. 2013), appeal denied, 87 A.3d 319 (Pa. 2014). When a defendant seeks to withdraw a plea after sentencing, as is the case here, she must demonstrate "prejudice on the order of manifest injustice before

withdrawal is justified." ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1046 (Pa.Super. 2011) (citation omitted). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." ***Commonwealth v. Stork***, 737 A.2d 789, 790 (Pa.Super. 1999), appeal denied, 764 A.2d 1068 (Pa. 2000).

"The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily, and intelligently made." ***Commonwealth v. Diaz***, 913 A.2d 871, 873 (Pa.Super. 2006) (citation and internal quotation marks omitted), appeal denied, 931 A.2d 656 (Pa. 2007). In order to ensure a voluntary, knowing, and intelligent plea, trial courts are required make the following inquires in the guilty plea colloquy:

> (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea.

***Commonwealth v. Kpou***, 153 A.3d 1020, 1023 (Pa.Super. 2016) (citation omitted); ***see also*** Pa.R.Crim.P. 590.

> It is clear that before accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea. However, the "factual basis" requirement does not mean that the defendant must admit every element of the crime. In this respect, the United States Supreme Court has held:

> While most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

> Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

*Commonwealth v. Fluharty*, 632 A.2d 312, 313 (Pa.Super. 1993) (citing

*North Carolina v. Alford*, 400 U.S. 25, 37 (1970)) (internal citations and

quotation marks omitted).

"Pennsylvania law presumes a defendant who entered a guilty plea was

aware of what he was doing, and the defendant bears the burden of proving

otherwise." *Kpou*, 153 A.3d at 1024 (citation omitted). Therefore, "[a]

defendant is bound by the statements he makes during his plea colloquy, and

may not assert grounds for withdrawing the plea that contradict statements

made when he pled." *Commonwealth v. McCauley*, 797 A.2d 920, 922

(Pa.Super. 2001) (citation omitted).

Here, a review of the certified record supports the trial court's conclusion

that Appellant was not entitled to withdraw her plea. On the contrary,

Appellant's contention that her nolo contendere plea was involuntary and the

result of undue influence is belied by the record. On April 18, 2022, Appellant

made the decision to plead no contest after the court explained the meaning

of a no contest plea and Appellant said she understood. N.T.T. at 70, 73. Appellant read and executed a written colloquy wherein she acknowledged, *inter alia*, that no promises or threats were made to her with regard to her plea and that she was pleading no contest of her own free will. *Pro Se* Colloquy at 1, 4. That same day, the trial court conducted an on the record colloquy, as mandated by Rule 590. The transcript of the plea colloquy demonstrates that the trial court inquired at great length with regard to Appellant's decision to plead.

Specifically, Appellant indicated during this hearing that she understood her right to a jury trial and that she was considered innocent until proven guilty. N.T.T. at 73-74. The maximum penalty for each crime was explained by the court, N.T.T. at 75-76, but the trial judge assured Appellant that she would not be getting jail time under the plea. N.T.T. at 77. Appellant further acknowledged that she understood the elements of the charges she was pleading guilty to and was informed of the permissible ranges of sentences for each count. N.T.T. at 74-75. The record indicates that Appellant was given a factual basis for the plea. N.T.T. at 81. The terms and conditions of probation were explained to Appellant, and she stated she understood. N.T.T. at 79-80. The trial court also provided Appellant with an explanation of her appellate rights, and Appellant indicated that she understood them. N.T.T. at 85-86.

Appellant cites the court's "ominous" warning and threats of incarceration as improper overstatements of the consequences, inducing her to plead. Appellant's Br. at 8, 9. These warnings and threats were accurate.

The trial judge did not essentially say, "either take the plea or go to jail." The trial court essentially said, "either take the plea or risk getting convicted, and if you are convicted you will go to jail." This is not an overstatement of the Commonwealth's case or the circumstances that Appellant was facing. The trial court told Appellant what the video footage shown to the jury depicted and what the victim said on direct examination in Appellant's absence. Additionally, the court told Appellant several times that the decision is "entirely up to" her. N.T.T. at 68.

Accordingly, based on the foregoing, Appellant's arguments that she did not enter into a knowing and voluntary plea because she was "under [d]uress, [a]nxiety, and [s]evere [e]motional [d]istress," and she reluctantly entered her plea "due to the court's undue influence," lack merit. Appellant's Br. at 6, 7, 9. There is absolutely no evidence that Appellant lacked a full understanding of the nature and consequences of pleading nolo contendere. Therefore, we conclude that the court did not abuse its discretion when it found that Appellant knowingly and voluntarily decided to enter the plea.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/12/2023